1  PATRICK H. HICKS, ESQ., Bar # 4632
   ETHAN D. THOMAS, ESQ., Bar # 12874
2  LITTLER MENDELSON, P.C.
   3960 Howard Hughes Parkway, Suite 300
3  Las Vegas, NV  89169-5937
   Telephone:     702.862.8800
4  Fax No.:       702.862.8811

5  JAMIE CHU, ESQ., Bar # 10546
   LITTLER MENDELSON, P.C.
6  2050 Main Street, Suite 900
   Irvine, CA 92614
7  Telephone:     949.705.3000
   Fax No.:       949.724.1201

8
   Attorneys for Defendants
9  CLARK COUNTY SCHOOL DISTRICT,
   EDWARD GOLDMAN and ANITA WILBUR

10
                    **UNITED STATES DISTRICT COURT**
11
                         **DISTRICT OF NEVADA**
12

13
   ELENA RODRIGUEZ-MALFAVON,            CASE NO. 2:12-CV-01673-APG-PAL
14
                 Plaintiff,
15
   vs.                                  **DEFENDANTS' MOTION FOR**
16                                       **SUMMARY JUDGMENT**
   CLARK COUNTY SCHOOL DISTRICT,
17 EDWARD GOLDMAN and ANITA
   WILBUR,
18
                 Defendants.
19

20

21        Defendants CLARK COUNTY SCHOOL DISTRICT ("CCSD"), EDWARD GOLDMAN

22 ("Goldman"), and ANITA WILBUR ("Wilbur") (hereinafter collectively referred to as

23 "Defendants"), by and through their attorneys of record, hereby move for summary judgment on all

24 claims brought forth by Plaintiff ELENA RODRIGUEZ-MALFAVON pursuant to Rule 56 of the

25 Federal Rules of Civil Procedure ("FRCP"). There is no genuine dispute as to any material fact and

26 therefore, Defendants are entitled to judgment as a matter of law. Accordingly, Defendants

27 respectfully request that the Court enter an order granting summary judgment in favor of Defendants

28 and dismiss Plaintiff's claims with prejudice.

TTLER MENDELSON, P.C.
     Attorneys At Law
3960 Howard Hughes Parkway
        Suite 300
 Las Vegas, NV  89169-5937
      702.862.8800

This Motion is based upon the following Memorandum of Points and Authorities, Exhibits, Declarations, and any oral arguments permitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Elena Rodriguez-Malfavon ("Plaintiff"), a former Coordinator III (administrator) at CCSD, was demoted to a support staff position after receiving two consecutive unsatisfactory evaluations for failing to adequately perform her job duties during the 2009-2010 and 2010-2011 school years.   Plaintiff now alleges four causes of action against Defendants: (1) national origin discrimination in violation of Title VII, (2) retaliation in violation of Title VII, (3) race discrimination in violation of 42 U.S.C. §§ 1981; and (4) retaliation in violation of 42 U.S.C. §§ 1983.  Compl. (Doc. #1).  Specifically, Plaintiff contends that she was subjected to discrimination based upon her national origin (Cuban) and her race (Caucasian), retaliation for engaging in protected activity, and retaliation for her alleged exercise of First Amendment rights.

The undisputed evidence establishes that Plaintiff received the unsatisfactory evaluations after two separate supervisors, in two different divisions of CCSD, found her performance to be unsatisfactory.   Both of these supervisors noted that Plaintiff failed to provide value as an administrator.   Pursuant to the Negotiated Agreement between CCSD and the Clark County Association of School Administrators and Professional-Technical Employees ("CCASAPE"), administrators who receive two consecutive unsatisfactory evaluations are among the first employees to be reduced from the workforce during reduction in force proceedings.  In June 2011, after receiving her second consecutive unsatisfactory evaluation during an ongoing reduction in force, Plaintiff was demoted from her administrative position to a support staff position, where she remains employed to this day.

An examination of the evidence reveals that Plaintiff cannot establish any of the claims she makes against the Defendants.  Additionally, while Plaintiff has worked for CCSD since 1990, for the past several years her performance indicates that she is more concerned with collecting perceived slights and involving herself in matters outside of her job description than she is with performing her job in a satisfactory manner.   Accordingly, Plaintiff's claims are without merit and Defendants'

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

2

1    Motion for Summary Judgment should be granted in its entirety.

2    **II.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

3        **A.    PLAINTIFF'S EMPLOYMENT HISTORY WITH CCSD**

4        Plaintiff was initially hired in February of 1990 to a support staff position within CCSD's

5    human resources division. **Exhibit 1**, Deposition of Elena Rodriguez-Malfavon ("Malfavon Dep."),

6    18:21-24; 19:7-14.   After her hire, Plaintiff worked in several different positions within Human

7    Resources but by 2006 she was assisting with integrating and operating an Enterprise Resource

8    Planning ("ERP") system. **Ex. 1**, Malfavon Dep. at 20:10-21:5.   During her tenure within Human

9    Resources, Plaintiff was promoted to an administrative position. *Id.* at 19:24-20:3.

10       **B.    PLAINTIFF'S TRANSFER TO THE PURCHASING DEPARTMENT**

11       In January 2009, Plaintiff and another employee, Brenda Ralston, were asked to transfer to

12   the Purchasing Department to assist the department with its ERP system. **Ex. 1**, Malfavon Dep. at

13   21:10-22:8.   As a result of the transfer, Plaintiff remained in an administrative position (Coordinator

14   III), under the ultimate supervision of the Director of Purchasing and Warehousing, Bramby Tollen

15   ("Tollen"). **Ex. 1**, Malfavon Depo at 22:25-23:4; 33:11-14.   Initially, Plaintiff's direct supervisor

16   was Al Ringhofer, but in September 2009 her duties changed and she was supervised directly by

17   Tollen. *Id.* at 23:22-24; 33:15-23.

18       **C.    PLAINTIFF'S TENURE IN THE PURCHASING DEPARTMENT**

19       On October 13, 2009, Plaintiff requested to transfer from the Purchasing Department because

20   she did not like her new job responsibilities and was no longer working on the ERP project.[1]

21   **Exhibit 2** (October 13, 2009 Email to Jeff Weiler).   Notably, Plaintiff did not complain, or even

22   imply, that her transfer request was in any way related to alleged discriminatory conduct by Tollen.

23   *See id.*   After Plaintiff's request for a transfer, she (along with her union representative) met with

24   Tollen and Steve Staggs ("Staggs"), the Assistant Director of Purchasing and Warehousing. **Ex. 1**,

25   Malfavon Dep. at 81:17-22; **Exhibit 3** (November 9, 2009 Summary of Conference).   During this

26   conference, Tollen expressed concern over Plaintiff's failure to address her concerns with Tollen

27

28   _____

[1] Plaintiff's email requesting a transfer also implied that Tollen was dishonest to Plaintiff. *See* **Ex. 2**.

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702.862.8800

prior to requesting a transfer.  *Id.*  Tollen informed Plaintiff that she was surprised by Plaintiff's actions because Plaintiff had seemingly embraced the assignments she had received.  *See id.*  During that meeting, Plaintiff identified what she believed was "unfair treatment" including being told to dress appropriately for a meeting with the Board of Trustees, and being required to attend two working lunches over nine months.  *Id.*  Plaintiff further relayed that she was concerned about discipline if she did not participate in committee events, and did not complete her duties allegedly due to insufficient time.  *Id.*  Additionally, Plaintiff stated that if things did not change, she intended to discuss her concerns with Diversity and Affirmative Action Executive Manager Tom Rodriguez ("Rodriguez").  *Id.*  Not once during that meeting did Plaintiff state that she was being discriminated against because of her race or national origin.  *See id.*  As a result of the conference, Plaintiff was issued six directives to help improve her work performance including, but not limited to, the need to be honest in her dealings with management, coworkers, and customers, and the need to afford the chain of command the opportunity to address her concerns regarding her job responsibilities prior to elevating them to other individuals.  *Id.*

On November 9, 2009, another investigatory conference was held with Plaintiff.  *See* **Exhibit 4** (December 3, 2009 Oral Warning Conference Summary).  The purpose of the conference was to address time discrepancies and misrepresentations made by Plaintiff relating to time off with pay. *Id.*  Tollen also addressed the need for Plaintiff to bring any questions or concerns to their regularly scheduled meetings on Tuesdays and Fridays, and not to write multiple emails regarding the same throughout the week.[2]  *Id.*  On November 17, 2009, Tollen sent Plaintiff a memorandum clarifying her responsibilities due to Plaintiff's continued performance issues.  **Exhibit 5** (Written Clarification of Task Assignments).   Shortly thereafter, on November 22, 2009, Plaintiff sent an email to Rodriguez noticing her intent to file internal discrimination and harassment charges against Tollen. **Exhibit 6** (November 22, 2009 Email to Rodriguez).  On November 25, 2009, Plaintiff participated

---

[2] On December 1, 2009, Plaintiff prepared a response to the summary of conference she received on November 9, 2009, stating that Tollen made it difficult to discuss issues with her because Tollen did not want Plaintiff to email or send her hard-copy correspondence.  *See* **Exhibit 7** (December 1, 2009 Response to Summary of Conference)**.**  Plaintiff made no allegation that the summary of conference she received was a result of discrimination or harassment.  *See id.*

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800

4

in another investigatory conference with Tollen to address Plaintiff's continued noncompliance with previous directives. *See* **Ex. 4**.

On December 2, 2009, Plaintiff submitted a seven page log to Rodriguez. **Exhibit 8** (December 2, 2009 Log). On December 3, 2009, Plaintiff was issued an Oral Warning Conference Summary which summarized the investigatory conferences that occurred on November 9 and November 25, 2009. **Ex. 4**. Plaintiff was also issued six directives to improve her performance and was warned that failure to improve may result in an unsatisfactory appraisal report, further discipline, and/or suspension, demotion, or dismissal.[3] *Id.*

After Plaintiff's complaint, CCSD opened an investigation into her allegations against Tollen. *See* **Exhibit 10** (December 9, 2009 Memo to Tollen). In response, Purchasing Supervisor Dani Culbert submitted a written statement detailing that Plaintiff did not complete her assigned tasks, refused to keep agreed-upon meetings with staff, failed to provide adequate notice for meetings, and created confusion with the team. **Exhibit 11** (Dani Culbert Email). Additionally, Al Ringhofer submitted two statements rebutting Plaintiff's erroneous characterization of the facts. **Exhibits 12 and 13** (Ringhofer Memorandums). In the first statement, Ringhofer explained that Plaintiff's frequent absences impacted her training and her ability to meet deadlines. **Ex. 12**. In his second statement, Ringhofer explained that despite Plaintiff's request to move into a vacant office, Plaintiff remained in a double cubicle because he felt it would be best for her to continue to work and train daily with her cubicle-mate, Carol Ellenbecker. *See* **Ex. 13**.

On February 1, 2010 Rodriguez emailed Plaintiff to inform her that he had twice spoken with Tollen regarding Plaintiff's allegations and had requested specific information from Tollen in response to the same. **Exhibit 14** (February 1, 2010 Rodriguez Email to Plaintiff). Rodriguez informed Plaintiff that her perception of how she had been treated was "not consistent with the documentation [Tollen] has on file," and that it was unlikely that Plaintiff would be transferred out of the Purchasing Department. *Id.*

On March 11, 2010, Staggs and Ringhofer issued a memorandum summarizing a conference

---

[3] Plaintiff submitted a formal response to the oral warning on January 6, 2010. **Exhibit 9** (January 6, 2010 Response).

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

5

they had with Plaintiff the prior day.  **Exhibit 15** (March 11, 2010 Summary of Conference).  During the conference, Staggs and Ringhofer addressed multiple performance issues with Plaintiff including: procedures for calling in sick, procedures for taking time off, the amount of time it takes her to perform her assigned tasks, concerns that she was involving support staff employees in matters they should not be involved in, her involvement in office rumors and gossip, and concerns that she was conducting union business while on CCSD time.  *Id.*

On April 12, 2010, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on race, national origin, and retaliation.  **Exhibit 16** (Charge of Discrimination). On May 10, 2010, Tollen provided a detailed response to Plaintiff's allegations which revealed that Plaintiff's allegations were either convenient half-truths, or entirely false.  **Exhibit 17** (May 10, 2010 Tollen Memorandum to Rodriguez).  Some of Tollen's specific points were:

- Contrary to Plaintiff's assertion that she is always required to submit a time-off request while other employees are not, Tollen clarified that Plaintiff rarely worked additional hours and, therefore, did not have hours to offset her time away from work.  As a result, Plaintiff was required to submit formal requests for time off.
- Regarding Plaintiff's assertion that she had been denied an office, Tollen reiterated Ringhofer's explanation that Plaintiff had first been assigned to a double cubicle to assist in her training.  Plaintiff was moved to an office in October 2009 when she began supervising employees.  However, Plaintiff frequently closed her door to conduct personal business and did not work successfully with those members assigned to her team.  As a result, Plaintiff was moved back to a cubicle so that she would continue to cross-train with other purchasing employees.
- Regarding Plaintiff's allegation that Robin Rankow was provided an office despite not supervising employees, Tollen noted that Ms. Rankow was initially assigned a desk in a shared office with the employee training her.  Further, Tollen pointed out that Ms. Rankow works in a cubicle Wednesday through Friday when she is learning purchasing documents.
- With respect to Plaintiff's allegation that she was instructed to change her clothing before a meeting, Tollen noted that on two prior occasions, Plaintiff was informed of the department's dress code for meetings with external suppliers. Despite this knowledge, Plaintiff's attire on the day of the board meeting was too casual and she was instructed to go home and change or to purchase more professional attire.  **Ex. 17**.

On June 24, 2010, Ringhofer issued an annual performance evaluation rating Plaintiff's overall performance as "not satisfactory."  **Exhibit 18** (June 24, 2010 Performance Evaluation).  Ringhofer noted that Plaintiff approached her job as if it were a support staff position given the amount of hours she worked.  *Id.*  He also noted that "[f]rom day one in the department, she has been more concerned with documenting perceived slights and the behavior of others (as discussed in a summary

TTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

6

1    of conference dated November 9, 2009) rather than looking to increase her knowledge and

2    responsibilities and, consequently, her value to the department." *Id.*

3    **D.     PLAINTIFF'S TRANSFER TO EDUCATION SERVICES DIVISION ("ESD")**

4         In August 2010, Plaintiff was transferred to the Education Services Division ("ESD")

5    following Tollen's personal appeal to Dr. Edward Goldman, then the Associate Superintendent for

6    the ESD.   **Exhibit 19**, Deposition of Edward Goldman (Goldman Dep."), 7:20-8:22; 31:25-33:5.

7    Plaintiff was assigned to a Coordinator III position at the Academy for Individualized Study

8    ("AIS"), an alternative high school that had recently relocated to the former Bishop Gorman campus.

9    **Ex. 1**, Malfavon Dep. at 24:2-4, 130:23-25, 138:17-20; **Exhibit 20**, Deposition of Isaac Stein ("Stein

10   Dep.") 5:9-22.  While employed at AIS during the 2010-2011 school year, Plaintiff was supervised

11   by Principal Anita Wilbur.  **Ex. 1**, Malfavon Dep. 24:7-9.

12        Plaintiff's position at AIS was a new position, but Wilbur assigned Plaintiff to oversee

13   support staff employees, including monitoring and conducting performance evaluations, as well as

14   managing facilities.  *See* **Exhibit 21** (June 2, 2011 Performance Evaluation) (noting Plaintiff's

15   responsibility to supervise support staff and manage facilities); **Exhibit 22**, Deposition of Jasmine

16   Cook ("Cook Dep.") 15:6-14; **Exhibit 23**, Deposition of Kari Esparza ("Esparza Dep.") 35:23-25;

17   **Exhibit 24**, Deposition of Kristin Slaveck ("Slaveck Dep.") 13:22-14:3.

18   **E.     PLAINTIFF'S PERFORMANCE AT AIS**

19        In early 2011, it became apparent to Wilbur that Plaintiff was not fulfilling all of her

20   responsibilities and was generally performing in a substandard manner.  **Exhibit 25**, Deposition of

21   Anita Wilbur ("Wilbur Dep.") at 12:15-13:19; 19:5-20.  Wilbur met with Plaintiff and reviewed her

22   job responsibilities and expectations in January and February 2011.  *See* **Exhibit 26** (May 26, 2011

23   Oral Warning Summary) (noting meetings with Plaintiff regarding her responsibilities).  Wilbur also

24   discussed Plaintiff's performance with Wilbur's superiors, Isaac Stein and Brad Waldron. *Id.*; **Ex.

25   25**, Wilbur Dep. at 12:15-13:19; 19:5-20.  Eventually, Wilbur formally addressed the ongoing

26   concerns she had with Plaintiff's performance in an oral warning summary issued to Plaintiff on

27   May 26, 2011.  **Ex. 26**.  Wilbur's oral warning summary highlighted issues she had addressed with

28   Plaintiff previously and touched upon Plaintiff's continued failure to comply with previous

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

7

directives. *See id.*

Specifically, the oral warning noted that in February 2011, Wilbur met with Plaintiff to discuss and review support staff concerns and deadlines for evaluations. *Id.*; **Ex. 25**, Wilbur Dep. at 30:10-14. In that meeting, Wilbur expressed concerns regarding the performance of a new Registrar. **Ex. 26**. Wilbur was disappointed to learn that Plaintiff had no direct observations addressing the performance concerns, even though that was part of her responsibilities. *Id.* During that meeting Plaintiff was also reminded that a performance evaluation for the Registrar was due on April 1, 2011. *Id.* Plaintiff failed to provide a draft of the evaluation to Wilbur until after the deadline had already passed which resulted in the evaluation being issued 12 days late. *Id.*

The oral warning also noted that in February 2011, all employees at AIS were trained regarding mandatory time clock usage for employees at the school. *Id.* Plaintiff, like <u>all</u> other employees at the school, was instructed that use of the computerized time clock would be mandatory effective April 1, 2011. *Id.*; **Ex. 25**, Wilbur Depo at 26:18-27:2. Despite these instructions, Plaintiff did not commence using the time clock system until April 18, 2011. **Ex. 26**. Additionally, on May 3, 2011, Wilbur noted that Plaintiff failed to modify her time record to reflect a correct return time to the school following an off-site meeting she attended. *Id.*

The oral warning also noted that when Plaintiff started at AIS, one of her assigned responsibilities was ensuring that every employee is issued a required fire key. *Id.*; **Ex. 25**, Wilbur Dep. at 28:24-29:3. A fire key is issued to employees so that they can open the fire alarm pull. **Ex. 1**, Malfavon Dep. at 179:2-4. Later in the school year, Wilbur discovered that no employee had ever been issued a required fire key. **Ex. 26**. During the same time period it was also discovered that Plaintiff had failed to create and distribute the "shelter-in-place" bins and materials which had been purchased for classrooms throughout the school. *Id.* Shelter-in-place bins are placed in classrooms in case of an emergency. **Ex. 1**, Malfavon Dep. at 182:13-21. Given that Plaintiff's responsibilities were over the school facilities, these tasks were essential functions of her job. *See* **Ex. 26**.

In summation, the oral warning noted "you have failed to perform your assigned duties in a satisfactory manner. You have also failed to comply with previous directives given to you in a manner deemed to be satisfactory." *Id.* The record indicates that Wilbur drafted the oral warning

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702.862.8800

8

with the assistance of CCSD Director of Employee Management Relations, Fran Juhasz, something Juhasz customarily did with supervisors throughout the district. **Exhibit 27**, Deposition of Fran Juhasz ("Juhasz Dep.") 4:21-5:1, 11:8-12:13, 17:10-14, 18:15-18. As was the common practice in various divisions throughout the district, once the final draft of the oral warning was complete, it was sent to Goldman, the head of Plaintiff's division, to see if he had any feedback prior to Wilbur issuing the oral warning. **Ex. 27**, Juhasz Dep. at 14:1-7, 17:8-18:13; **Ex. 19**, Goldman Dep. at 14:8-16:5.

On June 2, 2011, Wilbur issued an annual performance evaluation to Plaintiff. **Ex. 21**. For the second consecutive year, by a completely different evaluator than the previous year, Plaintiff's overall performance was deemed not satisfactory. *See id.* and **Ex. 18**. Specifically, the evaluation indicates that Plaintiff did not perform her job duties in a timely manner, failed to perform some of her assigned job duties at all, and had multiple missteps with her attendance and time-keeping. **Ex. 21**. As was the case with the oral warning, Fran Juhasz assisted Wilbur with the drafting of the evaluation. **Exhibit 28**, Reconvened Deposition of Fran Juhasz ("Reconvened Juhasz Dep.") 7:9-19, 11:14-12:1; **Exhibit 29**, Reconvened Deposition of Edward Goldman ("Reconvened Goldman Dep.") 10:16-11:9. Once the evaluation was finalized, it was sent to Goldman for a final review. **Ex. 28**, Reconvened Juhasz Dep. at 8:2-23; **Ex. 29**, Reconvened Goldman Dep. at 6:5-7:3. While Goldman reviewed the evaluation, he at no time required or even encouraged Wilbur to issue an unsatisfactory evaluation to Plaintiff. *See* **Ex. 25**, Wilbur Dep. at 33:16-34:9; **Ex. 28**, Reconvened Juhasz Dep. at 8:2-23; **Ex. 29**, Reconvened Goldman Dep. at 5:6-12, 6:5-7:3, 8:8-17, 10:5-7.

**F.  SURVEILLANCE CAMERAS AT AIS**

Prior to Plaintiff's employment at AIS, the school had previously employed the use of video-only surveillance cameras when it was located at Western High School. **Exhibit 30**, Deposition of Dennis Littlefield ("Littlefield Dep.") 8:19-9:17. The purpose of the security cameras was to provide added security because both the Western High campus and the former Bishop Gorman campus were not in the safest locations. **Ex. 30**, Littlefield Dep. at 21:7-22:7. The cameras were installed and maintained by Dennis Littlefield ("Littlefield"), then the Education Computer Specialist at AIS. **Ex. 30**, Littlefield Dep. 4:23-5:4, 8:19-9:17. While the cameras that Littlefield

TTLER MENDELSON, P.C
Attorneys at Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

9

installed at AIS had audio capabilities, he specifically disabled their audio function.  **Ex. 30**, Littlefield Dep. at 9:13-17, 10:11-11:2.  The video captured in the cameras were only monitored and/or reviewed following a relatively few specific incidents.  *See* **Exhibit 31** (April 29, 2011 Littlefield Statement).  The other purpose for having the cameras was to help monitor the flow of students and parents visiting various areas of the campus.  **Ex. 30**, Littlefield Dep. at 9:7-12; 10:18-11:2.

Later in the school year, Plaintiff began expressing concern to Wilbur's superiors that the use of cameras somehow violated district policy and potentially state and/or federal law because of her unsupported belief that the cameras were audio recording.  **Ex. 1**, Malfavon Dep. at 147:13-18. Plaintiff claims that she raised this issue with CCSD's legal department in January 2011, with Wilbur's supervisor, Isaac Stein ("Stein"), in February 2011, and with Stein's supervisor Brad Waldron in March 2011.[4]  **Ex. 1**, Malfavon Depo 165:6-21, 167:9-15, 170:9-15.

During this same period, Plaintiff was not the only employee to make complaints about the cameras at AIS.  *See* **Exhibit 33** (April 14, 2011 Kristin Slaveck Email); **Ex. 1**, Malfavon Dep. at 160:15-162:3;  **Ex. 24**, Slaveck Dep. at 19:1-22;  **Exhibit 34**, Deposition of Mary Vallianos ("Vallianos Dep.") 5:4-25, 11:7-23.  Kristin Slaveck and Mary Vallianos made similar complaints about the cameras in April 2011.  *Id.*  There is no evidence that Slaveck or Vallianos were retaliated against for making these complaints and both testified that they remain employed by CCSD in the same positions they held at the time they made them.  **Ex. 24**, Slaveck Dep. at 19:1-22; **Ex. 34**, Vallianos Dep. at 5:4-25, 11:7-23.

In response to the complaints, Stein conducted an investigation into the use of the cameras at AIS, as well as several other issues the employees had raised to him.  **Exhibit 35** (Notice of Investigatory Conference); **Ex. 20**, Stein Dep. at 6:21-7:14.  Part of the investigation included an interview with Wilbur on April 29, 2011.  **Ex. 20**, Stein Dep. at 8:25-9:13.  During the meeting, Wilbur denied that the employees were being audio recorded.  *Id.*  During his investigation, Stein

---

[4] Plaintiff also claims that she complained about the cameras to Goldman on May 20, 2011.  **Ex. 1**, Malfavon Dep. at 186:2-24. While Plaintiff did copy Goldman on the May 20 correspondence wherein she complains about a host of things she believed Wilbur and other employees were allegedly doing wrong, the letter fails to mention any concerns that the cameras were audio taping. *See* **Exhibit 32** (May 20, 2011 Email and relevant attachment).

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

10

also spoke to Littlefield and another employee at the school with knowledge about the cameras, Monique Gaudin, and both denied the allegation that the cameras were recording audio. **Ex. 20**, Stein Dep. 20:17-22:4. Ultimately, the investigation was concluded when Stein could not corroborate the allegations that the cameras were recording audio, which was reflected in the summary of conference he issued to Wilbur following her investigatory interview. *Id.* at 9:1-6; **Exhibit 36** (May 19, 2011 Summary of Conference).

### G. ELIMINATION OF PLAINTIFF'S POSITION AND REDUCTION IN FORCE

In the spring of 2011, as a result of significant budget cuts, and upon a mandatory cut of positions through every division at CCSD, Plaintiff's position was selected for elimination. **Ex. 19**, Goldman Dep. at 19:10-20:1. The decision to eliminate Plaintiff's position was made by Executive Director Brad Waldron, in conjunction with the input of Goldman. *Id.* at 19:19-20:1. Ultimately, two positions within the ESD were eliminated, including Plaintiff's position. *Id.* at 33:9-34:15. Plaintiff's position was chosen for elimination because it was considered a "gift" or "off-ratio" position, meaning that the position was not tied to any other unit and/or funding because the funding came with Plaintiff in her transfer from the Purchasing Department. *Id.* at 31:25-34:15. Therefore, this position was the least supportable position because the funding for the position had only recently came to ESD with Plaintiff's transfer. *Id.* at 31:25-34:15.

Plaintiff was notified that her position had been selected for elimination on May 2, 2011 by Hilary Engel, Director of Administrative Personnel Services. **Exhibit 37** (May 2, 2011 Engel Email). Plaintiff was informed that reduction in force ("RIF") procedures agreed upon by CCSD and CCASAPE would be run to determine where she, and the other employees whose positions had been eliminated, would be placed. *Id.* The fact that her position was eliminated did not mean that Plaintiff was automatically terminated or demoted. Rather, under the agreed upon RIF procedures, an employee may potentially be placed in a different position based upon the employee's qualifications and seniority. **Exhibit 38**, Deposition of Hilary Engel ("Engel Dep.") 26:1-17; **Ex. 19**, Goldman Dep. 29:5-30:2. While the RIF process was ongoing, Plaintiff received the above-referenced second consecutive unsatisfactory performance evaluation. **Ex. 21**.

For years, Section 26-2-2 of the Negotiated Agreement provided that "administrators who

TTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

11

have been twice rated as unsatisfactory within the last two (2) successive contract years" were among the first to be reduced in force.[5] **Exhibit 39** (2011-2013 Negotiated Agreement).  During the 2010-2011 school year CCSD and CCASAPE had been involved in active negotiations regarding their 2011-2013 Negotiated Agreement.  **Ex. 19**, Goldman Dep. at 27:16-27, 28:6-10, 31:16-21.  One specific change proposed by the union was for administrators who had received two consecutive unsatisfactory evaluations to be demoted to a support staff position during a reduction in force.  **Ex. 19**, Goldman Dep. at 23:7-25:7; **Ex. 40**.  The other portion of the union's proposal with respect to this new provision to the Negotiated Agreement, was that those administrators who are demoted under the second unsatisfactory evaluation provision of the Negotiated Agreement, will have no right of return to an administrative position.  **Ex. 19**, Goldman Dep. at 23:7-25:7, 30:12-31:15; **Ex. 40**.  Contrary to Plaintiff's allegations, Goldman had no role in negotiating these changes to the Negotiated Agreement.  **Ex. 19**, Goldman Dep. at 27:3-28:10.  These changes were negotiated when Juhasz was still the negotiator.  *Id.*

While the entire 2011-2013 agreement had not been formally adopted by June 2011, both CCSD and CCASAPE agreed to utilize the new provisions of Article 26-2-2 during the RIF process that was occurring.  **Exhibit 42** (June 7, 2011 Juhasz Email to Engel).[6]  Because Plaintiff and two other CCSD administrators had recently received their second consecutive unsatisfactory evaluation, they were the first employees to be reduced in force.  *Id.*  On June 17, 2011, Engel informed Plaintiff that pursuant to Article 26-2-2 of the Negotiated Agreement, she had been reassigned to a support staff position.  **Exhibit 44** (June 17, 2011 Engel Email to Plaintiff); **Ex. 38**, Engel Dep. at 20:16-23:6.

III.    **STANDARD OF REVIEW**

One of the principal purposes of a summary judgment motion is to isolate and dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules of

---

[5] This specific provision of the Negotiated Agreement had been in place since 2005.  *See* **Exhibit 40** (2009-2011 Negotiated Agreement) and **Exhibit 41** (2005-2009 Negotiated Agreement).
[6] "Steve A." is Steven Augspurger, the director of CCASAPE.  *See* **Exhibit 43**, Declaration of Fran Juhasz at ¶10.

TTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

12

1   Civil Procedure which are designed "to secure the just, speedy, and inexpensive determination of

2   every action. *Id.* at 327.  Summary judgment must be rendered if the pleadings, depositions, answers

3   to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

4   genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

5   Fed. R. Civ. P. 56(e).  Accordingly, a party opposing summary judgment cannot simply rest on the

6   pleadings, but must provide sufficient evidence that would allow a reasonable trier of fact to return a

7   verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

8         Pursuant to this standard, the burden of the party seeking summary judgment is satisfied by a

9   showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477

10   U.S. at 325.  For instance, when the nonmoving party bears the burden of proving the claim or

11   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

12   essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party

13   failed to make a showing sufficient to establish an element essential to that party's case on which

14   that party will bear the burden of proof at trial.  *See Serlin v. The Alexander Dawson Sch.*, No. 2:12-

15   CV-1431 JCM GWF, 2014 WL 1573535, at \*2-3 (D. Nev. April 17, 2014) (citing *Celotex Corp.*,

16   477 U.S. at 323-24).  The burden then shifts to the nonmoving party to show specific facts of a

17   genuine issue for trial.  *Celotex*, 477 U.S. at 332.  "[U]ncorroborated and self-serving testimony,"

18   without more, will not create a "genuine issue" of material fact precluding summary judgment.

19   *Villarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

20   **IV.**     **LEGAL ARGUMENT**

21        **A.**     **PLAINTIFF CANNOT ESTABLISH A CLAIM OF NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII**

22

23   Plaintiff alleges that she was discriminated against based on her national origin by both

24   Tollen (Purchasing Department) and Wilbur (AIS).  Complaint at §§ IV-VII.  In order to establish a

25   *prima facie* case of discrimination in violation of Title VII, Plaintiff must show that: "(1) she

26   belongs to a protected class, (2) she was performing according to her employer's legitimate

27   expectations, (3) she suffered an adverse employment action, and (4) other employees with

28   qualifications similar to her own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169 5937
702 862 8800

13

1  F.3d 1217, 1220 (9th Cir. 1998).  If Plaintiff states a *prima facie* case, the burden of production

2  shifts to CCSD to articulate some legitimate, nondiscriminatory reason for the adverse employment

3  actions taken, and if CCSD meets this burden, Plaintiff must demonstrate that the proffered reasons

4  are pretextual.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

**1.    Alleged Discrimination While in Purchasing Department**

6         Plaintiff cannot establish a *prima facie* case of national origin discrimination because she was

7  not performing to CCSD's legitimate expectations and because her alleged instances of

8  discrimination do not amount to adverse employment actions.[7]  Indeed, the evidence establishes that

9  Plaintiff's performance while in the Purchasing Department was <u>not</u> satisfactory.  *See* **Exs. 3, 4, 5,**

10  **11, 12, 13, 15, 17, and 18**.  Plaintiff's supervisors documented the many investigatory interviews

11  and conferences they held with Plaintiff to address their concerns with her performance.  *Id.*  Instead

12  of acknowledging her own shortcomings and attempting to improve, Plaintiff focused her efforts on

13  documenting every perceived slight and involved herself in matters outside of her job description.

14  **Ex. 18**.  In light of Plaintiff's inability to improve her performance, Ringhofer issued an annual

15  performance evaluation which rated her overall performance as not satisfactory.  *Id.*  Given that

16  Plaintiff cannot establish that she was performing according CCSD's expectations, Plaintiff's

17  discrimination claim fails as a matter of law.

18         Furthermore, the alleged discriminatory conduct does not amount to an adverse employment

19  action.  Specifically, Plaintiff alleges that she was subject to national origin discrimination because:

20  (1) she was not given an office when she transferred to the Purchasing Department; (2) an incident

21  where Tollen requested that she change to more appropriate clothing or purchase clothing

22  appropriate for a meeting they were to attend; (3) Tollen taking away "administrative" duties and

23  giving her "clerical" duties; (4) receiving less training than she claims she was promised; (5)

24  requiring her to formally make up time she spent out of the office; (6) Tollen allegedly not allowing

25  her to rearrange her furniture once she was given an office; and (7) her June 2010 unsatisfactory

26  evaluation.  **Ex. 1**, Malfavon Dep. 34:6-35:22, 36:1-11, 37:12-19, 38:1-39:13; 49:6-19; 64:22-65:2;

[7] Plaintiff also fails to provide <u>any</u> evidence that similarly-situated employees outside of her protected class were treated more favorably.

103:22-1.  This type of conduct does not amount to a material adverse employment action.  *Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2013 WL 6157858, at \*7 (D. Ariz. Nov. 25, 2013) (*citing Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment").  As a matter of law, allegedly giving Plaintiff a cubicle instead of an office, requesting that she follow department policies, providing Plaintiff less training than she desired, and allowing Plaintiff to rearrange furniture are not adverse employment actions.  *See Frehner v. Clark Cnty. Sch. Dist.*, No. 2:12-CV-02083-APG, 2014 WL 1309114, at \*9 (D. Nev. Mar. 31, 2014) (inconvenience and alteration of job responsibilities is insufficient); *Moore v. Marriott Int'l, Inc.,* No. CV-12-00770-PHX-BSB, 2014 WL 5581046, at \*11 (D. Ariz. Oct. 31, 2014) (warnings that do not change compensation, terms, or conditions of employment are insufficient).  Even the June 2010 unsatisfactory evaluation, in and of itself, did not directly affect the terms, conditions, or privileges of her employment as Plaintiff continued to receive the same compensation and benefits.  Absent such employment actions, Plaintiff's claims fail as a matter of law.

Even if, for the sake of argument, Plaintiff was able to establish a *prima facie* case of national origin discrimination, her claim still fails because a legitimate non-discriminatory reason exists for all of the alleged discriminatory actions taken against her.  When Plaintiff moved to the Purchasing Department the goal was to help her learn by allowing her to train with other employees. **Exs. 11, 13, and 17**.  For this reason alone, she was assigned to a cubicle and not an office.  **Exs. 13 and 17**.  Indeed, Plaintiff received training on a daily basis and also participated in regular meetings in which she was encouraged to ask questions of co-workers and supervisors.  *See* **Exs. 11, 13, and 17**.  As for the incident in which Tollen requested that Plaintiff change her outfit prior to a meeting with the Board, Tollen detailed what actually occurred in her response to Plaintiff's complaints.  **Ex. 17**.  On the day in question, Tollen observed that Plaintiff was dressed casually for a meeting with the Board, and asked Plaintiff to go home and change into something more professional.  *Id.*

Additionally, CCSD does not deny that Plaintiff was asked to either take formal time-off or to make up her time when she wanted to leave the office early.  **Exs. 13 and 17**.  While many of the administrators in the Purchasing Department "bank" time by working extra hours, Plaintiff rarely did

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800

15

1    so. *Id.* As a result, Plaintiff's supervisors asked her to submit time-off forms as required by district

2    policy just as it would for anyone else under the same circumstances. *Id.*

3         Finally, for a brief period in the Fall of 2009 Plaintiff was given a supervisory role and

4    assigned to an office. **Ex. 17**. Unfortunately, Plaintiff was unsuccessful in that role. *Id.* Tollen

5    noted that Plaintiff "frequently closed her door to conduct personal business and did not work with

6    those assigned to assist her. She was not able to learn the job and the team's performance decreased.

7    She was moved back to a cubicle to continue to learn and cross train with other purchasing

8    employees." *Id.* Accordingly, it was Plaintiff's performance, and not her national origin, which led

9    to Tollen taking away some of her duties. Given that Plaintiff's performance never improved, in

10   June 2010 Ringhofer issued her annual performance evaluation which noted that she was not

11   providing value as an administrator. *See* **Ex. 18**.

12        In order to rebut these legitimate reasons, Plaintiff must produce evidence that demonstrates

13   discrimination directly, by showing that discrimination more likely motivated the employer, or

14   indirectly using "specific and substantial evidence challenging the credibility of the employer's

15   motives." *Vasquez v. County of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2003); *Coughlan v.*

16   *American Seafoods Co., LLC,* 413 F.3d 1090, 1095 (9th Cir. 2005). In determining whether the

17   employer's proffered reasons for termination were not pretext, courts "only require that an employer

18   honestly believe its reason for its actions, even if its reason is foolish or trivial or even baseless."

19   *Villarimo,* 281 F.3d at 1063. Here, there is no direct evidence of discriminatory animus.[8] Thus,

20   Plaintiff must establish a circumstantial case of discrimination, which she cannot do, because it did

21   not happen.

22        When questioned at her deposition as to why Plaintiff believed the incidents referenced

23   above were evidence of national origin discrimination she provided a series of responses which

24   establish that her claim is based on nothing more than personal belief. Her responses indicate that:

25        (1) Plaintiff bases her allegation that she did not receive an office when she first came
           to Purchasing on the fact that other administrators who were not Cuban had

26

27   _____

     [8] Direct evidence demonstrates discriminatory animus "without inference or presumption." *See Bergene v. Salt River*

28   *Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1141-43 (9th Cir. 2001) *(citing Godwin,* 150 F.3d at 1221).
     Circumstantial evidence "must be specific and substantial in order to survive summary judgment." *Id.* at 1142.

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

offices. (**Ex. 1**, Malfavon Dep. at 43:2-11);

(2) Plaintiff bases her allegation that she was asked to change or purchase new clothes prior to attending an off-site meeting because she was Cuban on her belief that another employee who was African-American was dressed similarly to Plaintiff and that employee was not asked to change or purchase clothing for the meeting.[9] (*Id.* at 45:12-46:4, 47:18-49:1);

(3) Plaintiff bases her allegation that she was stripped of administrative duties because she was Cuban on a personal feeling she had that she was treated differently than others. (*Id.* at 52:8-53:3);

(4) Plaintiff bases her allegation that she received less training because she was Cuban on a gut feeling she had at the time. (*Id.* at 53:4-54:5);

(5) Plaintiff bases her allegation that she was asked to formally make up time spent out of the office because she was Cuban on the fact that other supervisors were not asked to formally make up their time out of the office. (*Id.* at 58:19-23, 59:10-19);

(6) Plaintiff bases her allegation that she was not allowed to rearrange furniture in her office because she was Cuban on her own perception that she was being treated differently than everyone else. (*Id.* 64:10-21) and;

(7) Plaintiff testified that she believed her June 2010 evaluation was retaliation for issuing internal complaints and filing with the EEOC. (*Id.* at 63:4-6).

Other than Plaintiff's subjective belief that discrimination occurred, there is no evidence of pretext. *See Steckl v. Motorola*, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (plaintiff's mere assertion that [the company] had discriminatory motive and intent in failing to promote him were inadequate, without substantial factual evidence). Additionally, an employee's mere subjective disagreement with a personnel decision is <u>not</u> evidence of discrimination. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 745-46 (9th Cir. 2004) (merely arguing that defendant's stated reason for plaintiff's employment action is "unworthy of credence" is insufficient, without any supporting evidence, to create a genuine issue of material fact).

### 2.    Alleged Discrimination While at AIS

As for Plaintiff's time working at AIS, Plaintiff alleges three instances of discriminatory conduct: (1) Wilbur allegedly stopped involving her in meetings with school registrars; (2) Wilbur issuing her an oral written warning in May 2011; and (3) Wilbur issuing her performance evaluation a week after she received the disciplinary document.[10] **Ex. 1**, Malfavon Dep. at 131:1-16, 132:8-19,

---

[9] Plaintiff admitted to not paying attention to what the other employee was wearing. **Ex. 1**, Malfavon Dep. 48:11-14.

[10] Plaintiff also alleges that on one occasion Wilbur said negative things to her about another Cuban employee at the school who had been accused of making rude and discourteous comments to students and parents. **Ex. 1**, Malfavon Dep. at 27:2-31:16. While Plaintiff alleges the comments were made to her, she admits they were about another employee. *Id.* Accordingly, these comments were clearly not an employment action taken against Plaintiff. *Drottz* 2013 WL 6157858 at *7. Defendants also maintain that even if Plaintiff's vague allegation that Wilbur stopped involving her in meetings with Registrars were true, it is not an adverse action which affected any terms or conditions of her employment. *Frehner*, 2014 WL 1309114 at *9.

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

1   133:24-134:8.

2       As was the case with her time in Purchasing, Plaintiff cannot establish that she was

3   discriminated against while working at AIS because the evidence shows that she was <u>not</u> performing

4   up to CCSD's legitimate expectations.  Wilbur had concerns with Plaintiff's employment earlier in

5   the school year and discussed those concerns with her superiors.  **Ex. 26**; **Ex. 25**, Wilbur Dep. at

6   12:15-13:19; 19:5-20.  As Plaintiff's poor performance persisted, Wilbur concluded that it was

7   necessary to issue an oral warning documenting her concerns.  *Id.*  Subsequently, Wilbur also rated

8   Plaintiff's overall performance as not satisfactory in her annual performance evaluation.  **Ex. 21**.

9       Furthermore, Plaintiff has not identified one similarly situated employee outside of her

10   protected class that was treated more favorably than she was at AIS.  In fact, the evidence

11   demonstrates that Wilbur was a tough boss who demanded a lot from <u>all</u> employees.  **Ex. 34**,

12   Vallianos Dep. at 20:20-25; 21:15-22:6.  This is fatal to Plaintiff's claim.  Plaintiff cannot establish

13   her discrimination claim because she was not performing at the level that was expected of her and no

14   similarly situated employees outside of her protected class were treated more favorably than she

15   was.

16       Even if Plaintiff was able to establish a *prima face* case of national origin discrimination, her

17   claim would still fail because there are legitimate, non-discriminatory reasons for the discipline and

18   performance evaluation Wilbur issued to her.  Plaintiff's oral warning details multiple areas of

19   concern regarding Plaintiff's performance including her failure to complete assigned tasks, the

20   issuance of a late evaluation, her non-compliance with required time clock use, and her inaccurate

21   reporting of time away from the office.  *See* **Ex. 26**.  All of these concerns represent legitimate non-

22   discriminatory reasons for Plaintiff to receive an oral warning.  *Id.*  The same goes for Plaintiff's

23   performance evaluation which notes specific areas of her performance that were not satisfactory.

24   **Ex. 21**.

25       Accordingly, for Plaintiff to prevail she must show that the above stated reasons were

26   pretextual through the use of specific and substantial evidence.  *Bergene,* 272 F.3d at 1141-43.

27   Plaintiff's subjective disagreement with the substance of the discipline is not enough to avoid

28   summary judgment.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir.

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

18

2006); *Bodett*, 366 F.3d at 745-46.   Here, the record is devoid of <u>any</u> evidence of pretext. Accordingly, summary judgment should be granted as to Plaintiff's national origin claim.

**B.      PLAINTIFF CANNOT ESTABLISH A CLAIM OF RETALIATION IN VIOLATION OF TITLE VII**

In order to establish a *prima facie* case of retaliation, Plaintiff must show: (1) involvement in a protected activity, (2) a "materially adverse" employment action, and (3) a causal link between the protected activity and the adverse employment action.   *See Brooks v. City of San* Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)); *see also Burlington Northern & Santa Fe Rwy. Co. v. Whit*e, 458 U.S. 53, 68 (2006) (setting forth the "materially adverse" standard).   Plaintiff cannot establish the third element of this cause of action.

The U.S. Supreme Court recently clarified the standard of proof with respect to causation holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation [motivating factor] test stated in§ 2000e-2(m). This new standard requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Serlin,* 2014 WL 1573535, at *6 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013)).   The Court recognized that "claims of retaliation are being made with ever-increasing frequency" and that "lessening the causation standard could also contribute to the filing of frivolous claims, which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace harassment." *Nassar,* 133 S. Ct. at 2531.

During her deposition, Plaintiff identified six alleged instances of retaliation for making an internal complaint and filing a Charge of Discrimination: (1) investigatory conferences which took place in October and November 2009; (2) Plaintiff's June 2010 unsatisfactory evaluation; (3) Tollen requesting that Plaintiff not email her and to only speak to her when they were in meetings; (4) requiring that Plaintiff move out of an office and into a cubicle; (5) limiting Plaintiff's training to 30 minutes a day; and (6) having a support staff employee assign her duties.   **Ex. 1**, Malfavon Dep. at 61:7-63:15, 67:10-68:5.   As discussed below, *even if true*, these allegations are insufficient to establish retaliation as a matter of law.

TTLER MENDELSON, P C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800

19

While CCSD acknowledges that Plaintiff engaged in protected activity by lodging her internal complaints of discrimination on November 22 and December 2, 2009, and in filing a Charge of Discrimination in April 2010, there is no evidence of a causal connection between her protected activity and the alleged retaliation.  The evidence establishes that the October and November investigatory conferences related to concerns Tollen had with Plaintiff's performance and the fact that Plaintiff jumped the chain of command to request a transfer out of Purchasing (while implying that Tollen had been dishonest).  *See* **Exs. 3, 4, and 5**.  It should also be noted that the investigatory conferences which occurred prior to November 22, 2009 could not have been in retaliation for complaining about discrimination because that was the first time Plaintiff filed an internal discrimination complaint with CCSD.  **Ex. 6**.  Only two investigatory conferences occurred after the first internal complaint (November 25, 2009 and March 11, 2010) – both of which related to Plaintiff's continued poor performance and non-compliance with previous directives.  *See* **Exs. 4 and 15**.  While Plaintiff may disagree with her 2010 performance evaluation, it also related to her job performance throughout a school year which was riddled with documented performance issues.  *See* **Exs. 3, 4, 5, 15, and 18**.

Additionally, multiple employees were asked to avoid emailing Tollen throughout the week and to save their questions or concerns for their regular meetings with Tollen.  *See* **Ex. 11** (noting three employees given similar directives); **Ex. 17**.  As for the final instances of alleged retaliation, the evidence actually shows that Plaintiff received an abundance of training and was only asked to move out of her office after it was determined that she was ineffective in the role she had been given.  **Exs. 11, 13, and 17**.  For this very reason she no longer supervised employees and some of her duties were taken away.  **Ex. 17**.

While Plaintiff may believe she was retaliated against, her personal belief is not evidence of retaliation.  *CarePartners LLC v. Lashway*, 428 F. App'x 734, 736 (9th Cir. 2011) (quoting *Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1028 (9th Cir.2001)) ("[a] plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation").  Additionally, knowledge and temporal proximity alone is insufficient to avoid summary judgment.  *Drottz* 2013 WL 6157858, at *15 (noting that post-*Nassar,* plaintiffs

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

1    "must meet the 'more demanding' burden of showing but-for causation").  "While knowledge and

2    proximity in time certainly remain relevant when inferring but-for causation, in this case they cannot

3    be enough to satisfy Plaintiff's *prima facie* burden. If the Court were to hold otherwise, it would

4    transmute an employee's preemptive engagement in a protected activity, whether frivolous or not,

5    into a shield against the imminent consequences of poor job performance." *Id.*  This absolute

6    freedom from accountability is exactly what Plaintiff desires, considering she testified that she

7    believes *every* criticism she ever received was retaliatory.  **Ex. 1**, Malfavon Dep. at 93:10-17.  In

8    light of these facts, Plaintiff has failed to present ***evidence*** that a causal connection exists between

9    her complaints and the alleged actions taken against her, let alone the but-for causal connection

10   necessary to avoid summary judgment.[11]

### C.   PLAINTIFF CANNOT ESTABLISH RACIAL DISCRIMINATION IN VIOLATION OF §§ 1981 AND 1983

In a loosely veiled attempt to circumvent Title VII's prohibition on individual liability,

Plaintiff's Third Cause of Action asserts that she was discriminated against in violation of 42 U.S.C.

§§ 1981 and 1983.  The Complaint is not only purposely vague as to what type of discrimination this

cause of action seeks to vindicate, but it also attempts to comport violations of two separate statutes

into one claim.  *See* Compl., pp. 6-7.   Nonetheless, the Ninth Circuit has held that the same

evidentiary standards that apply to disparate treatment claims pursuant to Title VII also apply to

claims brought pursuant to §§ 1981 and 1983.  *Mustafa v. Clark County School District*, 157 F.3d

1169, 1180 n.11 (9th Cir. 1998).   Therefore, in order to prevail on her claim of intentional

discrimination in violation of §§ 1981 and 1983, Plaintiff must produce evidence that (1) she belongs

to a protected class, (2) she was performing her job satisfactorily, (3) she was subjected to an

adverse employment action, and (4) similarly situated individuals outside of her protected class were

treated more favorably.  *McDonnell Douglas*, 411 U.S. 792; *St. Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 506 (1993).

---

[11] Even if Plaintiff could establish the necessary causal connection, as explained above, CCSD had legitimate reasons for
the investigatory conferences, performance evaluation, Tollen's request to not email her throughout the week, Plaintiff
moving out of her office, and the fact that some of her duties were taken away.  *See* **Exs. 3, 4, 5, 11, 13, 15, 17, and 18**.
Plaintiff cannot and has not presented specific and substantial evidence of pretext, which means even if the court found
that a causal connection existed, she would still be unable to establish her claim of retaliation in violation of Title VII.

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

21

What is not entirely clear from the face of the Complaint is whether Plaintiff's Third Cause of Action is premised on racial or national origin discrimination. However, during Plaintiff's deposition she clarified that her claims in this case include discrimination based on race. **Ex. 1**, Malfavon Dep. at 25:16-24.[12]  While Plaintiff's race is unidentifiable in her Complaint, during her deposition she testified that she is Caucasian. *Id.* at 25:25-26:3.  Despite alleging that she was discriminated against in violation of §§ 1981 and 1983, during her deposition Plaintiff admitted that she has <u>no</u> evidence that any alleged adverse actions taken by Tollen or Wilbur occurred because of her race:

> **Q:** Are you accusing Ms. Wilbur of discriminating against you because you are Caucasian?
> **A:** It's hard to prove that.
> **Q:** You don't have any evidence of that, do you?
> **A:** No.
>                                      ***
> **Q:** Are you accusing Ms. Tollen of discriminating against you because of your race?
> **A:** No.

*Id.* at 32:11-16, 67:3-5.  Tollen and Wilbur are the only two employees Plaintiff claims discriminated against her.  **Ex. 1**, Malfavon Dep. 26:6-8, 26:20-23.  Plaintiff has made no similar allegations against Goldman and there is no evidence to suggest any discrimination on his part.  Given Plaintiff's own admission that there is no evidence that any of the alleged adverse actions in this case were taken because of her race, summary judgment must be granted as to Plaintiff's Third Cause of Action.

**D.    PLAINTIFF'S CLAIM FOR FIRST AMENDMENT RETALIATION UNDER § 1983 IS MERITLESS**

Plaintiff's Fourth Cause of Action for retaliation is based on Plaintiff's alleged exercise of her First Amendment rights in communicating with her supervisors.  The U.S. Supreme Court has recognized that public employees do not enjoy anything that approaches an "absolute" freedom of speech.  *See Umbehr v. Board of County Comm'rs*, 518 U.S. 668 (1996).  In fact, as noted by the Ninth Circuit in *Brewster v. Board of Education of the Lynwood Unified School Dist.*, 149 F.3d 971

---

[12] Plaintiff's First Cause of Action alleges national origin discrimination in violation of Title VII.  Accordingly, Plaintiff's Third Cause of Action must be the race discrimination claim she refers to.

TTLER MENDELSON, P. C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169-5937
702 862 8800

22

(9th Cir. 1998), *cert. denied*, 119 S.Ct. 1252 (1999), the Supreme Court has expressly recognized that "the government as employer . . . has far broader powers [to restrict expression] than does the government as sovereign." *Id. at 978* (*citing Waters v. Churchill*, 511 U.S. 661, 671 (1994)). Thus, when a public employee alleges that he/she has been discriminated against in retaliation for exercising First Amendment rights, courts must engage in a three-part inquiry:

> To prevail, an employee must prove (1) that the conduct at issue is constitutionally protected, and (2) that it was a substantial or motivating factor in the [adverse employment action]. If the employee discharges that burden, (3) the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.

*Id., citing Umbehr*, 518 U.S. 668 (enumeration added).   As discussed below, Plaintiff's claim fails on all three counts.

Plaintiff claims she was denied her right to free speech and/or retaliated against for engaging in constitutionally protected speech. **Ex. 1**, Malfavon Dep. at 104:16-21.  Plaintiff cited four ways in which her rights were allegedly violated: (1) Tollen allegedly not allowing Plaintiff to speak with other employees about their concerns in a one-on-one setting; (2) Tollen becoming angry with Plaintiff for telling employees during a meeting that Tollen was the person implementing a new policy Plaintiff did not agree with; (3) Plaintiff's conversations allegedly being recorded by the surveillance cameras at AIS; and (4) allegedly having her position identified for elimination during the RIF process and subsequently receiving the May 2011 oral warning and June 2011 unsatisfactory evaluation, which triggered her demotion, in retaliation for issuing complaints about the surveillance cameras at AIS.[13]  **Ex. 1**, Malfavon Dep. at 104:22-106:17, 107:11-17, 108:9-109:3, 109:4-110:10, 151:7-11, 165:6-18, 169:6-14, Correction Addendum. As discussed more fully below, the first three of these allegations do not form a cognizable claim under § 1983 as a matter of law.  As to Plaintiff's allegation that she was retaliated against for issuing complaints about the surveillance cameras, Plaintiff cannot establish a *prima facie* case of retaliation under § 1983.

---

[13] Plaintiff did not initially claim that the elimination of her position was in retaliation for the complaints she made about cameras.  It was not until she made corrections to her deposition transcript that she asserted this. **Ex. 1**, Malfavon Dep. at Correction Addendum.

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169-5937
702 862 8800

1

### 1.    Plaintiff's Complaints Were Not Constitutionally Protected

Plaintiff has the burden of proving constitutionally protected speech in a § 1983 action. *Mount Healthy School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).  The inquiry into the protected status of speech is one of law, not of fact.  *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).  "In evaluating the First Amendment rights of a public employee, the threshold inquiry is whether the statements at issue substantially address a matter of public concern."  *Brewster*, 149 F.3d at 978 (citations omitted).  If they do not, then the First Amendment is not triggered at all, and "it is unnecessary . . . to scrutinize the reasons" for the employer's action.  *Id., citing Connick*, 461 U.S. at 146.

In order for a public employee's speech to be "protected" under the First Amendment within the meaning of step one of the three-step test, (1) the speech must involve a matter of public concern and (2) the employee's interest in expressing himself must outweigh the State's interests in promoting workplace efficiency and avoiding workplace disruption.  *Brewster*, 149 F.3d at 978, *citing Waters*, 511 U.S. at 668.  The Supreme Court has held that speech relating to internal personnel disputes and working conditions should not be viewed as addressing matters of public concern.  *See Connick*, 461 U.S. at 149 ("the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs").

Plaintiff's first three allegations undoubtedly fail as a matter of law.  Plaintiff being required to have another employee present when she spoke to other employees about their work concerns, and her desire to have personal conversations with other employees in her department while at work are perfect examples of an internal personnel dispute.  **Ex. 1**, Malfavon Dep. at 104:22-106:17, 107:11-17, 108:9-109:3.  The same goes for Plaintiff's allegation that her rights were violated by Tollen getting angry with her because Plaintiff mentioned her by name in a meeting with other employees.  *Id.* at 109:4-110:10. Plaintiff's other allegation that surveillance cameras were recording day-to-day conversations she had around the office and that this, in and of itself, somehow violated her right to free speech is also an internal workplace matter.[14]  *Id.* at 151:7-11.  Given that these three allegations

---

[14] Even if that were not the case, Plaintiff could not articulate any of the conversations which were a matter of public concern.  **Ex. 1**, Malfavon Dep. at 151:12-153:2.

TTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

1  on their face fail to raise anything close to a public concern that outweighs an employer's need to

2  promote workplace efficiency, they undoubtedly fail as a matter of law.  *See Connick*, 461 U.S. at

3  149 ("To presume that all matters which transpire within a government office are of public concern

4  would mean that virtually every remark-and certainly every criticism directed at a public official-

5  would plant the seed of a constitutional case").

6  As for Plaintiff's complaints to management about the surveillance cameras, they too were

7  nothing more than internal complaints about her supervisor and do not amount to a matter of public

8  concern.  *Connick*, 461 U.S. at 146 (noting that employee expression not relating to any matter of

9  ***political, social, or other concern to the community*** does not fall within the First Amendment's

10  ambit).  In *Connick*, the U.S. Supreme Court noted that when a public employee "speaks not as a

11  citizen upon matters of public concern, but instead as an employee upon matters only of ***personal***

12  ***interest***, absent the most unusual circumstances, a federal court is not the appropriate forum in which

13  to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the

14  employee's behavior." *Id.* at 147 (emphasis added).  Accordingly, after the employee was asked to

15  transfer to another position, her speech in the form of distributing questionnaires to employees

16  throughout the office regarding the employer's office transfer policy, office morale, the need for a

17  grievance committee in the office, and the level of confidence in the office's supervisors was not

18  made as a matter of public concern.  *Id.* at 147.  The court noted that while discipline and morale in

19  the workplace are related to an agency's efficient performance of its duties, the focus of employee's

20  speech in this context was to "gather ammunition for another round of controversy with her

21  superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to

22  turn that displeasure into a cause celèbre." *Id.* at 148.

23  Plaintiff's attempt to manufacture an issue of so-called public concern is belied by the

24  documents that have been produced in this case.  **Exs. 32, 45** (May 1, 2011 email to Stein); **Ex. 50**.

25  In actuality, Plaintiff's complaints about the cameras, and a litany of other perceived work issues,

26  were levied specifically at Wilbur, in an attempt to shift the focus away from Plaintiff's own poor

27  performance.  *Id.*  Indeed, the complaints began escalating throughout the spring semester once it

28  became evident that Wilbur was unhappy with Plaintiff's performance.  **Ex. 1**, Malfavon Dep. at

TTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

25

165:6-23, 167:9-15, 170:9-15, 186:14-26, Corrections Addendum; **Exs. 32 and 45**.  This type of speech, motivated entirely from a personal interest, is not constitutionally protected speech of public concern. *Connick*, 461 U.S. at 146-48.  What these complaints actually are, is further proof of what had already been stated in Plaintiff's 2010 performance evaluation—that she was more concerned with documenting perceived slights than she was with improving her unsatisfactory performance. *See* **Ex. 18**.

### 2.    Plaintiff's Complaints About Surveillance Cameras Were Not a Substantial or Motivating Factor in the Employment Actions

Further, Plaintiff cannot establish that her internal complaints regarding the surveillance cameras were a substantial or motivating factor in her position being selected for elimination, the oral warning and performance evaluation she received in 2011, or in her resulting demotion to a support staff position.  Plaintiff has no direct evidence that her complaints about the cameras were a motivating factor in the oral warning or performance evaluation she received.  Instead, Plaintiff testified that her only "proof" was that she made complaints about the cameras starting in January 2011, an investigatory conference was held with Wilbur on April 29, 2011 (which related, in part, to the cameras), and Plaintiff subsequently received an oral warning and evaluation.  **Ex. 1**, Malfavon Dep. at 169:18-170:8.

The evidence, however, shows that there is no link between her complaints about the cameras and the elimination of her position or the oral warning and performance evaluation she later received.  It is important to note that the decision to eliminate Plaintiff's position and Wilbur's decision to issue Plaintiff an oral warning and performance evaluation were entirely unrelated.  Wilbur specifically testified that it was her decision to issue the discipline and evaluation and that she had already been contemplating issuing the oral warning since earlier in the year.  **Ex. 25**, Wilbur Dep. at 12:15-13:19, 19:5-22, 20:12-23, 33:16-34:9, 35:16-19.  Wilbur also testified that she had no knowledge that the unsatisfactory evaluation she drafted would have <u>any</u> specific consequence on Plaintiff as it relates to the RIF.  **Ex. 25**, Wilbur Dep. at 38:8-22.  Even more noteworthy, although Wilbur was interviewed by Stein in April 2011, she did not have knowledge that Plaintiff had issued complaints to her superiors about the cameras.  **Ex. 25**, Wilbur Dep. at

TTLER MENDELSON, P C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

26

39:13-40:13.  When the employee cannot present evidence that the alleged retaliator knew of the protected speech in question, then the alleged action could not have been motivated by the speech. *Keyser v. Sacramento Unified School Dist.*, 265 F.3d 741, 750-51 (9th Cir. 2001).

Nonetheless, even if there was evidence that both Goldman and Wilbur knew of the complaints, mere knowledge of Plaintiff's complaints prior to their actions, do not create a genuine issue of material fact as to whether the employment actions were motivated by the speech. *Id.* at 751-52; *Erickson v. Pierce County*, 960 F.2d 801, 805 (9th Cir.1992); *Umbehr*, 518 U.S. at 685 ("To prevail, Umbehr must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him").  Additionally, temporal proximity alone is insufficient to establish claims of retaliation unless the temporal proximity is very close. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Erickson*, 960 F.2d at 805 (a period of three months between protected activity and termination was not sufficient).  That is especially the case when an employee has a history of performance problems which makes it unreasonable to infer retaliation from the proximity in time between her speech and the employment action. *See e.g. Bermender v. Seneca Hosp. Dist.*, 25 F. App'x 611, 612 (9th Cir. 2002).  Plaintiff testified that her original complaints about the cameras began in January 2011.  **Ex. 1**, Malfavon Dep. at 165:6-23. She then alleges that she made additional complaints over the next several months. *Id.* at 167:9-15, 170:9-15, 186:14-26, Malfavon Deposition Corrections.   Had Plaintiff's complaints about the cameras actually been the motive of the alleged retaliation, surely the retaliation would have begun in early 2011 when she began making them.  Instead, by Plaintiff's own account, the alleged retaliatory conduct did not occur until May and June 2011, over 5 months after she issued her complaint, making her claim that they were retaliatory insufficient to avoid summary judgment.

Finally, and of critical importance for purposes of this Motion, it is undisputed that multiple employees issued complaints to Stein and Waldron about the cameras during the same time period as Plaintiff and none of them suffered adverse employment actions. *See* **Ex. 33**; **Ex. 1**, Malfavon Dep. at 160:15-162:3; **Ex. 24**, Slaveck Dep. at 19:1-22; **Ex. 34**, Vallianos Dep. at 5:4-25, 11:7-23.  In fact, there is no evidence to suggest that Mary Vallianos or Kristen Slaveck were ever disciplined for the

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169-5937
702 862 8800

27

1   complaints they made about the surveillance cameras.  *Id.*  Indeed, both Vallianos and Slaveck

2   remain employed with CCSD in the same positions they held when they made the complaints.  *Id.*  If

3   the elimination of Plaintiff's position, the oral warning, and the performance evaluation were

4   motivated by Plaintiff's complaints about the surveillance cameras, surely Vallianos and Slaveck

5   would have been the target of similar retaliatory conduct.  Given that there is no evidence that

6   Plaintiff's complaints were a substantial or motivating factor in the alleged actions, her § 1983 claim

7   must fail.

8   **3.    CCSD would have taken the same action absent the protected activity**

9   Plaintiff's position would have been eliminated and she would have received the oral

10   warning and unsatisfactory performance evaluation even absent her alleged protected activity.  It is

11   undisputed that as a result of significant budget cuts, and upon a mandatory cut of positions through

12   every division at CCSD, Plaintiff's position, along with many others, were selected for elimination.

13   **Ex. 19**, Goldman Dep. at 19:10-20:1.  The reason Plaintiff's position was selected for elimination in

14   ESD was because the funding for that position had only recently been gifted to ESD, which meant

15   the elimination of that position had little impact on the division as a whole.  *Id.* at 31:25-34:15.

16   Further, the fact that Plaintiff's position was eliminated did not mean that she would automatically

17   be demoted.  It only meant that she would be placed in a different position pursuant to the agreed

18   upon reduction in force procedures.  **Ex. 38**, Engel Dep. at 26:1-17; **Ex. 19**, Goldman Dep. at 29:5-

19   30:2.

20   Both the oral warning and performance evaluation document how Plaintiff failed to perform

21   according to standards in multiple facets of her assigned duties throughout the school year.  *See* **Exs.**

22   **21 and 26**.  Wilbur testified that long before she began drafting the oral warning and subsequent

23   evaluation, she had already spoken to Stein and Waldron about issues she was having with Plaintiff's

24   performance.  **Ex. 25**, Wilbur Dep. at 12:15-13:19; 19:5-20.  Significantly, Plaintiff was not the only

25   person subject to the new provision of the Negotiated Agreement upon receiving her second

26   consecutive unsatisfactory performance evaluation.  *See* **Ex. 42**.  Two other employees were treated

27   similarly which supports the granting of summary judgment on this claim.  *Id.*; *Lewis v. City of*

28   *Boston*, 321 F.3d 207 (1st Cir. 2003) (granting summary judgment after evidence was adduced that

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800

28

1    plaintiff's position was eliminated in reduction of force).

2          The fact that at least two other CCSD employees complained about the cameras during the

3    same time period and received no discipline confirms that Plaintiff's discipline is unrelated to

4    alleged complaints.  *See* **Ex. 33**; **Ex. 1**, Malfavon Dep. at 160:15-162:3; **Ex. 24**, Slaveck Dep. at

5    19:1-22; **Ex. 34**, Vallianos Dep. at 5:4-25, 11:7-23.  Once again, Plaintiff's speculation does not

6    create a genuine issue of material fact and summary judgment should be entered.

7    **E.    DEFENDANTS GOLDMAN AND WILBUR ARE ENTITLED TO THE**
     **        DEFENSE OF QUALIFIED IMMUNITY**

8          It is clear as a matter of law that Title VII claims may not be pursued against individual

9    defendants.  *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587-88 (9th Cir. 1993); *Nabozny v. NCS*

10   *Pearson, Inc.*, 270 F. Supp. 2d 1201, 1203-04 (D. Nev. 2003) ("only an employer can be liable for

11   unlawful employment discrimination").  Accordingly, while the Complaint fails to specify, the only

12   claims that could potentially be brought against Goldman and Wilbur in their individual capacities

13   are Plaintiff's Third and Fourth Causes of Action.[15]  With that in mind, if those claims are dismissed

14   on their merits as argued above, Defendants Wilbur and Goldman should be dismissed from this

15   action entirely.  Nonetheless, even if the Court does not dismiss those claims on their merits, both

16   Wilbur and Goldman are entitled to a qualified immunity defense.

17         The qualified immunity doctrine holds that governmental officials are shielded from suit as

18   long as their conduct does not violate clearly established federal or constitutional rights of which a

19   reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Brewster*,

20   149 F.3d at 977.  Qualified immunity is a far-reaching protection provided to government officials,

21   and if reasonable officials could disagree on the question of whether the conduct was constitutionally

22   permissible, immunity should be recognized.  *Brewster*, 149 F.3d at 977.

23         Defendants are entitled to qualified immunity with respect to the §1981 claim because

24   Plaintiff admitted there was no evidence of racial discrimination which means the alleged conduct

25   could not have violated clearly established federal or constitutional rights (Third Cause of Action).

26

27   _____

[15] In actuality, the only claim that could plausibly be brought against Goldman is the Fourth Cause of Action given that
28   the only people Plaintiff alleges ***discriminated*** against her were Tollen and Wilbur.  **Ex. 1**, Malfavon Dep. 26:6-8, 26:20-
     23.

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

29

**Ex. 1**, Malfavon Dep. at 32:11-16, 67:3-5. As for Plaintiff's Fourth Cause of Action, the protections of qualified immunity are especially applicable in the context of employee First Amendment speech claims. As noted in *Brewster*, because the balancing test of whether an employee's speech is constitutionally protected is necessarily a fact-specific and context-specific inquiry, the law regarding public-employee free speech claims will "rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity under *Harlow* and its progeny." *Id.* at 979-80. As set forth above, the internal work related complaints regarding the presence of surveillance cameras was not protected by the First Amendment. However, even if it were, given the fact and context-specific analysis necessary to come to that conclusion, it cannot be said that Defendants Goldman and Wilbur reasonably should have known that Plaintiff's speech was protected and that their alleged activity would violate a clearly established federal or constitutional right. *Brewster*, 149 F.3d at 979-80; *Lytle v. Wondrash*, 182 F.3d 1083 (9th Cir. 1999). The Supreme Court specifically holds that the qualified immunity standard permits the defeat of insubstantial claims without the resort of trial. *Harlow*, 457 U.S. at 815-818. Accordingly, Defendants Goldman and Wilbur are shielded by the doctrine of qualified immunity and should be dismissed from this action.

## V.   CONCLUSION

Based upon the foregoing, Defendants respectfully request the Court grant the instant Motion for Summary Judgment in its entirety. [16]

Dated: January 7, 2015

Respectfully submitted,

PATRICK H. HICKS, ESQ.
JAMIE CHU, ESQ.
ETHAN D. THOMAS, ESQ.
LITTLER MENDELSON, P.C.
Attorneys for Defendants
CLARK COUNTY SCHOOL DISTRICT,
EDWARD GOLDMAN and ANITA WILBUR

---

[16] *See* authentication declarations attached hereto as **Exhibits 43, 46, 47, 48, and 49.**

TTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169 5937
702 862 8800

## **PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada, 89169.  On January 7, 2015, I served the within document(s):

### **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

☒       By CM/ECF Filing – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Richard Segerblom, Esq.
700 South Third Street
Las Vegas, Nevada 89101

*Attorney for Plaintiff*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service.  Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 7, 2015, at Las Vegas, Nevada.

Robyn Craig

Firmwide:129874510.2 026133.1015

TTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas  NV  89169 5937
702 862 8800