# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ELENA RODRIGUEZ-MALFAVON,<br><br>Plaintiff<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, et al.,<br><br>Defendants | Case No.: 2:12-cv-01673-APG-PAL<br><br>**Order Granting in Part Defendants' Renewed Motion for Summary Judgment and Denying Plaintiff's Motion to Strike**<br><br>[ECF Nos. 125, 127] |

Plaintiff Elena Rodriguez-Malfavon brought this lawsuit against defendants Clark County School District (CCSD), Edward Goldman, and Anita Wilbur, alleging that they discriminated against her based on her race and national origin, retaliated against her when she complained about the alleged discrimination, and retaliated against her for complaining that Wilbur was audio recording teachers, parents, and students at school. I previously denied the defendants' motion for summary judgment on Rodriguez-Malfavon's Title VII retaliation claim, and that claim proceeded to trial.[1] I granted summary judgment on her claims for racial discrimination, national origin discrimination, and First Amendment retaliation.[2] Rodriguez-Malfavon appealed my order on only the First Amendment retaliation claim. The Ninth Circuit reversed my decision and remanded the case for further proceedings.[3]

The defendants again move for summary judgment.[4] Because I granted summary judgment on only one basis, they ask that I go back to the original summary judgment motion

---

[1] ECF Nos. 50, 108–111.
[2] ECF No. 50.
[3] ECF No. 122.
[4] ECF No. 125.

and consider the other, fully-briefed arguments they made. Rodriguez-Malfavon moves to strike the defendants' motion, arguing that the dispositive motion deadline passed years ago and the defendants were not permitted to file additional briefing absent an order requiring them to do so.[5]

I deny Rodriguez-Malfavon's motion to strike and I reconsider the defendants' summary judgment motion. I grant summary judgment in favor of Goldman because Rodriguez-Malfavon fails to show that Goldman was meaningfully involved in the retaliatory action. Because there is a genuine dispute of fact as to whether Rodriguez-Malfavon demonstrates a prima facie case of First Amendment retaliation against Wilbur and CCSD, I deny their motion for summary judgment on the merits. And because Rodriguez-Malfavon has demonstrated that her First Amendment right was clearly established, Wilbur is not entitled to qualified immunity.

## I. BACKGROUND

Elena Rodriguez-Malfavon began working for CCSD in a clerical position in the human resources division in 1990.[6] She transferred from different positions and departments throughout the next twenty years, and was at one point promoted to an administrative position. On August 9, 2010, Rodriguez-Malfavon was transferred to the Academy for Individualized Study High School (AIS), and retained her administrative position and funding from her previous department.[7] Defendant Goldman, who was the associate superintendent of the educational services division, approved the transfer.[8] In her new position, her supervisor was defendant

---

[5] ECF No. 127.

[6] ECF Nos. 39-1 at 3–4; 46-1 at 1.

[7] ECF No. 39-1 at 5. The circumstances under which Rodriguez-Malfavon was transferred to AIS were discussed in my previous summary judgment order. *See* ECF No. 50 at 1–4. They are not relevant to Rodriguez-Malfavon's First Amendment retaliation claim and will not be repeated here. The majority of facts in this section are taken verbatim from my previous order.

[8] ECF No. 39-3 at 18–19.

2

Wilbur.[9] When Rodriguez-Malfavon first started at AIS, she asked whether Wilbur had checked with the legal department about the legality of the video cameras that were installed at the school.[10] Wilbur said she had already gone through that process.[11] Rodriguez-Malfavon then asked whether the cameras recorded audio and Wilbur said that they did not.[12] In February 2011, Rodriguez-Malfavon told Wilbur's supervisor, Isaac Stein, about the cameras.[13]

At the end of March, Rodriguez-Malfavon met with Stein to discuss Wilbur's alleged audio taping of employees, students, and parents.[14] Rodriguez-Malfavon also complained to Brad Waldron, Stein's supervisor, about the cameras.[15] In mid-April, another CCSD employee, Kristin Slaveck, also complained to Waldron and Stein regarding the cameras at school after she transferred out of Wilbur's division.[16] About two weeks later, Stein advised Wilbur that they would have a meeting regarding the alleged audio taping and other staff complaints.[17] At the meeting, Wilbur said the cameras did not capture audio.[18] Stein investigated with the technical staff at AIS and confirmed that this was true.[19]

On May 2, 2011, Rodriguez-Malfavon received a notice from the human resources division that due to a reduction in force, her position had been identified for elimination and she

---

[9] ECF No. 39-1 at 9.
[10] ECF No. 46-7 at 4.
[11] *Id.*
[12] ECF No. 39-3 at 70.
[13] ECF Nos. 39-6 at 26, 29; 39-1 at 77–78.
[14] ECF No. 46-1 at 2–3.
[15] ECF Nos. 39-1 at 79; 39-3 at 27.
[16] ECF Nos. 39-3 at 50; 39-4 at 57.
[17] ECF No. 46-4 at 2.
[18] ECF No. 39-3 at 28–29.
[19] ECF No. 39-6 at 32–33.

3

would be subject to the reduction in force process.[20] Goldman made the decision to eliminate her position after the superintendent decreed that every division eliminate two administrative positions.[21] According to Goldman, Rodriguez-Malfavon's position was "easy" to eliminate because it was not that division's position anyway.[22] The other position he chose to eliminate was a vacancy, which he chose because that would not result in anyone losing their position.[23] Although Rodriguez-Malfavon's position was identified for elimination, that did not necessarily mean she would be terminated. Instead, a more senior employee could "bump" a less senior employee from his or her position under the reduction in force process.[24]

The reduction in force procedures under the union contract then in effect provided that volunteers would be the first to be let go, followed by administrators who had twice been rated as unsatisfactory within the last two years.[25] The procedures further provided that an administrator who was reduced in force because of two unsatisfactory ratings would be demoted to a non-administrative position and would have no right to go back to an administrative position if one opened up.[26]

On May 19, Stein issued a summary of his April meeting with Wilbur regarding the cameras.[27] Stein concluded that Wilbur had not been audiotaping, but he gave Wilbur several

---

[20] ECF No. 39-5 at 6.
[21] ECF No. 39-3 at 8, 19–20.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 13.
[25] *Id.* at 10.
[26] *Id.* at 11–12.
[27] ECF No. 46-4 at 4.

4

directives, including not to retaliate against any employees.[28]  According to Stein, the directive not to retaliate was common language to include.[29]  A few days later, Wilbur gave Rodriguez-Malfavon an oral warning for not documenting her time correctly, not using a new time clock procedure, not ensuring other employees received fire keys and shelter-in-place bins, and not timely evaluating a subordinate employee.[30]

On June 2, Wilbur gave Rodriguez-Malfavon an unsatisfactory evaluation, rating her satisfactory in one category and not satisfactory in four categories.[31]  The not-satisfactory rating was based on Rodriguez-Malfavon failing to distribute the shelter-in-place bins and fire keys, failing to timely evaluate another employee, and failing to use the time clock on the mandatory start date.[32]  Wilbur denies that Stein told her who complained to him or other supervisors about the alleged audio taping.[33]

Wilbur's unsatisfactory evaluation was Rodriguez-Malfavon's second within two years. She received her first from another supervisor in another CCSD division in 2010.[34]  Because she had two unsatisfactory evaluations and because her position was being eliminated under the reduction in force, Rodriguez-Malfavon was subsequently informed that she would be assigned

---

[28] *Id.*
[29] ECF No. 39-3 at 30.
[30] ECF No. 39-4 at 2; 46-4 at 6–7.
[31] ECF No. 39-3 at 37.
[32] *Id.*
[33] ECF No. 39-3 at 70–71.
[34] ECF Nos. 39-2 at 56; 46-3 at 13.

5

to a support staff position for the upcoming school year.³⁵  On June 30, 2011, Rodriguez-Malfavon went to work for the early childhood department.³⁶

Rodriguez-Malfavon sued CCSD, Wilbur, and Goldman for First Amendment retaliation under 42 U.S.C. § 1983.  The defendants moved for summary judgment in January 2015, arguing that Rodriguez-Malfavon's claim fails as a matter of law and that Wilbur and Goldman are entitled to qualified immunity for the claim against them in their individual capacities.  I granted the defendants' motion for summary judgment.  After assuming without deciding that Rodriguez-Malfavon had established her prima facie case for First Amendment retaliation, I determined that the defendants met their burden to show that they would have issued the negative employment evaluation and subsequently demoted her even absent her protected speech.  I did not reach Wilbur and Goldman's qualified immunity defense.³⁷

Rodriguez-Malfavon appealed and the Ninth Circuit reversed my decision.  Because Rodriguez-Malfavon provided an affidavit disputing the reasons Wilbur gave for issuing her negative evaluation, the Ninth Circuit determined that there was a genuine issue of material fact as to whether Wilbur would have issued the negative evaluation triggering her demotion if she had not complained about the use of audio recording at AIS.³⁸  Because I granted summary judgment solely on that basis, the panel limited its discussion to that issue and expressed no view on the merits of the remaining factors for consideration.³⁹

---

³⁵ ECF No. 39-6 at 7.
³⁶ ECF No. 39-1 at 9.
³⁷ *See* ECF No. 50.
³⁸ *See* ECF No. 122; 46-1.
³⁹ ECF No. 122 at 3 n.1.

The defendants now move for renewed summary judgment on the First Amendment retaliation claim. Because neither court ruled on the other factors involved in First Amendment retaliation analysis, the defendants ask me to address the additional arguments they made in their initial summary judgment motion. Rodriguez-Malfavon moves to strike the renewed motion because the deadline for dispositive motions passed years ago and the defendants have not shown good cause to extend it.

## II. ANALYSIS

### A. Motion to Strike (ECF No. 127)

Rodriguez-Malfavon moves to strike the defendants' renewed motion as untimely. But she ignores the unique procedural posture of this case. I initially granted summary judgment on the narrow finding that the defendants would have demoted Rodriguez-Malfavon regardless of her speech. I did not consider the fully-briefed alternative arguments that the defendants made in their initial summary judgment motion. On remand, the defendants request that I consider those arguments. They do not add new facts or arguments to their renewed motion. So I do not consider the defendants' motion as a violation of the scheduling order, and I will address it. I deny Rodriguez-Malfavon's motion to strike.

### B. Motion for Summary Judgment (ECF No. 125)

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] A fact is material

---

[40] Fed. R. Civ. P. 56(a), (c).

if it "might affect the outcome of the suit under the governing law."[41] An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[42]

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[43] The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[44] I view the evidence and reasonable inferences in the light most favorable to the non-moving party.[45]

### 1. Merits

A public employer may not retaliate against its employees for their exercise of First Amendment protected speech activities.[46] But a public employer has an interest in regulating its employees' speech.[47] To balance these concerns, the courts employ a five-part test to evaluate an employee's First Amendment retaliation claim.

First, the plaintiff must show that she "spoke on a matter of public concern."[48] "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community."[49] For example, speech that "exposes government wrongdoing or helps the public evaluate the performance of public agencies"

---

[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[42] *Id.*
[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[44] *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).
[45] *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).
[46] *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).
[47] *Karl*, 678 F.3d at 1068.
[48] *Id.*
[49] *Eng*, 552 F.3d at 1070 (quotation omitted).

generally will constitute matters of public concern.[50] In contrast, "speech that deals with individual personnel disputes and grievances" generally does not rise to the level of a matter of public concern.[51] Whether an employee's speech touches on a matter of public concern is a question of law that I determine based on the speech's "content, form, and context . . . as revealed by the whole record."[52] "The employee's motivation and the chosen audience are among the many factors to be considered in light of the public's interest in the subject matter of speech."[53] But "content is the greatest single factor" in the public concern inquiry.[54]

Second, the plaintiff must show she "spoke as a private citizen and not within the scope of her official duties as a public employee."[55] An employee speaks as a private citizen if she "had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."[56] The scope of the plaintiff's job is a question of fact, but the ultimate conclusion of whether the plaintiff spoke as a private citizen is a question of law.[57]

If the plaintiff makes these two showings, she then must show that she "suffered an adverse employment action, for which [her] protected speech was a substantial or motivating factor."[58] The defendant's mere knowledge of the protected speech does not suffice to show the

---

[50] *Karl*, 678 F.3d at 1069.
[51] *Eng*, 552 F.3d at 1070 (quotation omitted).
[52] *Id.* (quotation omitted).
[53] *Johnson v. Multnomah Cty., Or.*, 48 F.3d 420, 425 (9th Cir. 1995)
[54] *Johnson*, 48 F.3d at 424 (quoting *Havekost v. United States Dep't of Navy*, 925 F.2d 316, 318 (9th Cir. 1991)).
[55] *Karl*, 678 F.3d at 1068.
[56] *Eng*, 552 F.3d at 1071 (quotation omitted).
[57] *Id.*
[58] *Karl*, 678 F.3d at 1068.

causal link.[59] If there is no direct evidence of retaliatory motive, the plaintiff must present circumstantial evidence, such as proximity in time between the protected speech and the adverse action or that the employer's proffered explanations for the adverse actions were pretextual.[60] This step is a question of fact.[61] If the plaintiff makes these three showings, she states a prima facie case of First Amendment retaliation.[62]

The burden then shifts to the public employer at step four to show its "legitimate administrative interests outweigh the employee's First Amendment rights."[63] This is a mixed question of law and fact.[64] Alternatively, if the public employer fails to meet this burden, it can show at step five that it "would have taken the adverse employment action even absent the protected speech."[65] "In other words, it may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action."[66] Under this fifth and final step, the employer must show that even if it had both proper and improper bases to take the adverse action, it "would have taken the adverse action if the proper reason alone had existed."[67] This is a question of fact.[68]

---

[59] *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 685 (1995).
[60] *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 980 (9th Cir. 2002).
[61] *Eng*, 552 F.3d at 1071.
[62] *Karl*, 678 F.3d at 1068.
[63] *Eng*, 552 F.3d at 1071 (quotation omitted).
[64] *Id.*
[65] *Karl*, 678 F.3d at 1068.
[66] *Eng*, 552 F.3d at 1072.
[67] *Id.*
[68] *Id.*

Rodriguez-Malfavon alleges that Wilbur and Goldman retaliated against her because she communicated her concern about surveillance cameras in the school that she believed were recording conversations between teachers, students, and parents. She claims that her May 2011 oral warning and June 2011 unsatisfactory evaluation, which triggered her demotion, were made in retaliation for her comments.

### a. Public Concern

The defendants contend that Rodriguez-Malfavon's speech did not involve a matter of public concern. They argue that her complaints of Wilbur's alleged audio recording were motivated by the desire to undermine Wilbur when she became aware of the fact that she might be facing a negative evaluation for her performance.

While an employee's motivation for her speech is "among the many factors to be considered" to determine whether that speech relates to a matter of public concern, there is a genuine dispute of fact as to Rodriguez-Malfavon's motivation for her complaints. The defendants rely on Wilbur's deposition testimony stating that she noticed deficiencies in Rodriguez-Malfavon's performance in January or February of 2011 to assert that Rodriguez-Malfavon must have realized her job was in trouble and began fabricating issues with Wilbur to undermine any negative evaluations. They also point to the myriad of other office-related complaints Rodriguez-Malfavon lodged against Wilbur during the same time period to support this theory. But Rodriguez-Malfavon states that she did not know Wilbur had complaints about her performance until she received the oral warning in late May.[69] She also disputes the reasons Wilbur gave for her unsatisfactory evaluation, stating that she was not responsible for the duty

---

[69] *See* ECF No. 46-1 at 3.

11

Wilbur found she failed to perform.[70] And while Rodriguez-Malfavon occasionally grouped her surveillance-related complaints with interpersonal ones, it is not clear that all of her complaints stemmed from her personal issues with Wilbur. Indeed, Rodriguez-Malfavon voiced her concerns about the audio-recording capabilities of the school's video cameras within the first month of working with Wilbur, when she asked if Wilbur had checked with the district's legal department before installing them. I therefore do not discount the public's interest in Rodriguez-Malfavon's speech based on her motivations.

When stripped of the defendants' contention that Rodriguez-Malfavon's speech was motivated from personal interest, it is clear that her speech involves a matter of public concern. Rodriguez-Malfavon's speech concerned the surreptitious recording of parents, minor students, and school staff, which Rodriguez-Malfavon believed may violate district policy and federal law.[71] While she raised her complaints only to her supervisors, that fact does not outweigh the clear public import of the speech in this instance.[72] Rodriguez-Malfavon stated in a declaration that "many employees complained to [her] about the cameras, including [two] counselors . . . who were concerned their private conversations with students and parents were being

---

[70] *Id.*

[71] *See Burgess v. Pierce Cty.*, 918 F.2d 104, 105 (9th Cir. 1991) (finding speech involved matter of public concern when fireman complained of new fire regulations that he believed violated state law); *Sexton v. Martin*, 201 F.2d 905, 910 (8th Cir. 2000) (finding speech involved matter of public concern when employees complained that their private conversations were being recorded at work).

[72] *See, e.g., Johnson*, 48 F.3d at 425 (finding speech involved matter of public concern when employee complained to fellow employees about supervisor's potential misuse of public funds, wastefulness, and inefficiency, which was partially motivated from a private grudge against her supervisor); *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 412–13 (1979) (finding speech involved matter of public concern when teacher complained to principal about school policies she perceived as racially discriminatory).

12

recorded."[73] She noted in an email to Stein following her demotion that she informed Wilbur that audio recording was "against CCSD Employee Handbook Policy and also the Federal Wiretap Law."[74] She complained of specific instances where she believed Wilbur's use of audio recording violated the school's obligations under the Family Educational Rights and Privacy Act (FERPA).[75] She also expressed concern that Wilbur's audio recording could expose the district to potential liability.[76] That potential misconduct by a public official would likely be of interest to the community, particularly the students that attend CCSD schools and their parents.[77] I therefore conclude that Rodriguez-Malfavon met her burden to show that her speech involved a matter of public concern. The defendants do not argue that Rodriquez-Malfavon spoke within the scope of her official duties as a public employee, so I consider that argument waived and proceed to the third *Eng* factor.

b. **Substantial or Motivating Factor**

The defendants next contend that Rodriguez-Malfavon failed to present evidence sufficient to show that her speech was the substantial or motivating factor for her demotion. The defendants first argue that Wilbur and Goldman did not know about Rodriguez-Malfavon's complaints, and therefore could not have retaliated against her because of her speech. I agree with that argument with respect to Goldman, but not Wilbur.

---

[73] ECF No. 46-1 at 2–3.

[74] ECF No. 39-6 at 28.

[75] *Id.* at 29.

[76] *Id.*

[77] *See Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988) (concluding that an employee's reports of "wastefulness, mismanagement, unethical conduct, violations of regulations, and incompetence" to his supervisor were "inherently of interest to the public"), *overruled on other grounds by Garcetti v Cebellos*, 547 U.S. 410 (2006).

Goldman's involvement in Rodriguez-Malfavon's negative evaluation and subsequent demotion was limited. Goldman initially chose Rodriguez-Malfavon's position as one to eliminate as part of the district's reduction in force because her position was funded from a different division. Rodriguez-Malfavon does not allege, and there is no evidence to support an allegation, that Goldman's initial decision to eliminate Rodriguez-Malfavon's position was retaliatory.

After that decision was made, Goldman played a limited role in Rodriguez-Malfavon's discipline. As a matter of course, Goldman reviewed Wilbur's proposed oral warning and negative evaluation, and gave his final approval before they were issued. The evidence does not support an inference that Goldman knew about Rodriguez-Malfavon's complaints regarding Wilbur's use of audio surveillance. While he testified that he would have been aware of Wilbur's investigatory conference regarding audio recording generally, there is no evidence to support the inference that he knew Rodriguez-Malfavon's complaints are what sparked the investigation, or that the content of Wilbur's negative evaluation was pretext for a retaliatory motive. Because Rodriguez-Malfavon cannot show that Goldman was meaningfully involved in her adverse employment actions, I grant summary judgment in his favor.

The same cannot be said for Wilbur's actions. Viewing the evidence in the light most favorable to Rodriguez-Malfavon, a jury could infer a link between her speech and Wilbur's oral warning and negative evaluation. Wilbur acknowledges that Rodriguez-Malfavon asked her about the cameras and their audio capabilities in January or February of 2011. Rodriguez-Malfavon claims that she discussed her concerns with Wilbur in August 2010. Either way, the defendants contend that the gap in time between Wilbur's knowledge of Rodriguez-Malfavon's concerns and her oral warning and negative evaluation is too long to infer a connection.

But Wilbur did not know that Rodriguez-Malfavon was complaining to supervisors about Wilbur until she was required to attend an investigatory conference about the issue in late April. While Wilbur testified that Stein did not tell her which of her employees complained about audio recording at that conference, a jury could infer that Wilbur put two and two together and chose then to retaliate against Rodriguez-Malfavon based on her speech. The evidence shows that Wilbur began actively pursuing disciplinary options around May 20, 2011—approximately three weeks after her investigatory conference and only one day after she received the "summary of conference" directives relating to the investigation.[78] A gap of only three weeks is sufficiently close to infer a connection between Wilbur's awareness of Rodriguez-Malfavon's speech and the adverse employment action.

The defendants contend that, because two other employees complained about the audio recording but did not face retaliatory action, Rodriguez-Malfavon's claim fails. But the circumstances surrounding the other employees' complaints are meaningfully distinct from those surrounding Rodriguez-Malfavon's speech. Of the two employees that shared Rodriguez-Malfavon's concerns, one was no longer supervised by Wilbur when she made her complaints.[79] And there is no evidence in the record that Wilbur knew about the other employee's complaints. Thus, whether other employees who complained about Wilbur's audio recording were retaliated against is irrelevant to Rodriguez-Malfavon's claim that Wilbur retaliated against her. Therefore, there is a genuine issue of fact as to whether Rodriguez-Malfavon's speech was a substantial or motivating factor in her demotion.

---

[78] *See* ECF No. 46-5.

[79] *See* ECF Nos. 39-3 at 48–54, 39-4 at 57–58.

15

Because Rodriguez-Malfavon's speech relates to matters of public concern, and because there is a genuine issue of fact as to whether her speech was the substantial or motivating factor for her negative evaluation and subsequent demotion, she has demonstrated a prima facie case of First Amendment retaliation against Wilbur and CCSD. But because the evidence does not support a prima facie case against Goldman, I grant summary judgment in his favor.

### c. *Pickering* Balancing

Rodriguez-Malfavon has established a prima facie case for First Amendment retaliation, so I now consider whether the defendants met their burden to show that "legitimate administrative interests outweigh the employee's First Amendment rights."[80] The balancing test established in *Pickering v. Board of Education* guides this analysis.[81] But the defendants do not move for dismissal on this basis. They have therefore waived this argument at the summary judgment stage.[82] Because Wilbur and CCSD have failed to overcome Rodriguez-Malfavon's prima facie case of retaliation against them, I deny their motion for summary judgment on the merits.[83]

### 2. Qualified Immunity

Wilbur contends that even if I deny summary judgment on the merits of Rodriguez-Malfavon's First Amendment retaliation claim, she is entitled to qualified immunity in her

---

[80] *Eng*, 552 F.3d at 1071 (quotation omitted). Because the Ninth Circuit determined that there is a genuine issue of fact as to the fifth *Eng* factor, I discuss only the fourth.

[81] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

[82] *Eng*, 552 F.3d at 1074 (citing *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008)). The defendants cursorily raised the argument in reply when arguing for qualified immunity, but I do not consider issues raised for the first time in reply. *See Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

[83] The defendants do not distinguish between Wilbur and CCSD in their arguments for summary judgment. Because they do not raise the question of whether Wilbur's actions bind CCSD, I do not address that here.

individual capacity.⁸⁴ To determine whether she is entitled to qualified immunity, I "consider whether the contours of [Rodriguez-Malfavon's] First Amendment right were sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right."⁸⁵ Rodriguez-Malfavon bears the burden of proving that her claimed right is clearly established.⁸⁶ To do so, she must show that two things were clearly established in 2011: "(1) that [her] speech involved a matter of public concern, and (2) that the interests served by allowing [her] to express [herself] outweighed the state's interest in promoting workplace efficiency and avoiding workplace disruption."⁸⁷ In the First Amendment context, "whether or not [Malfavon] enjoyed a clearly established right to speak 'depends upon the sensitive ad hoc balancing that *Pickering* entails.'"⁸⁸

Wilbur cursorily argues that she is entitled to qualified immunity. She states that Rodriguez-Malfavon does not point to case law clearly establishing that her speech is protected. She then quotes the Ninth Circuit's general warning that "because the balancing test of whether an employee's speech is constitutionally protected is necessarily a fact-sensitive and context-specific inquiry, the law regarding public-employee free speech claims will 'rarely, if ever, be sufficiently clearly established to preclude qualified immunity.'"⁸⁹ But Wilbur fails to follow that quote with any argument relating to the balancing of factors in this case. The fact that in

---

⁸⁴ Goldman also raises a qualified immunity defense. Because I grant summary judgment in his favor on the merits, I do not include him in this discussion.

⁸⁵ *Karl*, 678 F.3d at 1073 (internal quotations omitted).

⁸⁶ *Brewster v. Bd. of Educ.*, 149 F.3d 971, 977 (1998).

⁸⁷ *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 747 (9th Cir. 2001) (citations omitted).

⁸⁸ *Brewster*, 149 F.3d at 980 (quoting *Moran v. Washington*, 147 F.3d 839, 845 (9th Cir. 1998)).

⁸⁹ ECF No. 39 at 30 (quoting *Brewster*, 149 F.3d at 980).

17

most cases the law will not be clearly established does not foreclose the argument it is in this case.[90] The defendants fail to engage in *Pickering* balancing to show why this case is the rule and not the exception, and I will not do it for them.[91]

So, I consider only whether it was clearly established that Rodriguez-Malfavon's speech involved a matter of public concern warranting First Amendment protection. Two cases bear on this question. In *Burgess*, the plaintiff was fired in retaliation for communicating with county officials and members of the public in opposition to the passage and enforcement of local ordinances that he believed conflicted with state standards and exposed the county to potential tort liability.[92] The Ninth Circuit held that Burgess's speech was a matter of public concern, and that the defendant officials were not entitled to qualified immunity because "discharging a public employee in retaliation for protected speech violated clearly established law of which a reasonable person would have known."[93] A case from the Eighth Circuit is also instructive. In *Sexton v. Martin*, the plaintiffs complained about their employer recording employees' telephone and radio conversations.[94] The court ruled that the plaintiff's speech was clearly established,

---

[90] Indeed, since the Ninth Circuit made that pronouncement, it has found some of those elusive cases that do preclude qualified immunity. *See, e.g.*, *Eng*, 552 F.3d at 1076; *Karl*, 678 F.3d at 1074; *Keyser*, 265 F.3d at 750; *see also Brewster*, 149 F.3d at 980 ("Despite the fact that employee-free-speech rights will not, as a general matter, be clearly established . . . we must determine whether the specific facts of this case present one of those rare instances in which *Pickering* rights are, despite balancing, clearly established.").

[91] *See Eng*, 552 F.3d at 1076 n.6 ("Because the Defendants waived the *Pickering* balancing argument, we need not address whether the Defendants' lack of justification to treat Eng differently was clearly established.").

[92] *Burgess*, 918 F.2d at 105 (9th Cir. 1991).

[93] *Id.* at 106 (citations omitted).

[94] *Sexton*, 201 F.2d at 910.

18

because "speech concerning potential misconduct by public officers is a matter of public concern."[95]

While these cases are not directly on point, "closely analogous preexisting case law is not required to show that a right was clearly established."[96] "Indeed, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'"[97] The principles articulated in *Burgess* and *Sexton* are similar enough to this case to put a reasonable official on notice that retaliating against Rodriguez-Malfavon for her speech would violate the First Amendment. The conduct Rodriguez-Malfavon complained of—illicit audio recording of public employees, minor children in counseling sessions, and interactions between students, parents, and teachers—qualifies as "potential misconduct" by public officials. Rodriguez-Malfavon raised her concerns because she believed Wilbur's actions violated district policy and federal law, and could expose the district to potential liability. In short, a reasonable official would have known that speech concerning the potentially illegal audio recording of students, parents, and public employees involves a matter of public concern, and retaliating against an employee for that speech would violate the First Amendment. So, Wilbur is not entitled to qualified immunity based on the arguments presented here.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 125) is GRANTED in favor of Edward Goldman. It is DENIED as to Anita Wilbur and the Clark County School District.**

---

[95] *Id.*
[96] *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).
[97] *Karl*, 678 F.3d at 1073 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

IT IS FURTHER ORDERED that plaintiff Elena Rodriguez-Malfavon's motion to strike **(ECF No. 127) is DENIED**.

DATED this 21st day of August, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE